UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| MARA BRAZILIAN, on behalf of herself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>MENU FOODS INCOME FUND, a Canadian corporation with its principal place of business in Ontario, Canada<br><br>and<br><br>MENU FOODS LIMITED, a Canadian corporation with its principal place of business in Ontario, Canada,<br><br>and<br><br>MENU FOODS, INC., a New Jersey Corporation, with its principal place of business in Pennsauken, New Jersey and a wholly owned subsidiary of MENU FOODS LIMITED,<br><br>and<br><br>MENU FOODS MIDWEST CORPORATION, a Delaware Corporation with its principal place of business in Emporia, Kansas and a wholly owned subsidiary of MENU FOODS LIMITED,<br><br>and<br><br>THE IAMS COMPANY, an Ohio Corporation with its principal place of business in Dayton, Ohio,<br><br>Defendants. | **Civil Action No: 07-**<br><br>**CLASS ACTION COMPLAINT AND JURY DEMAND** |

Plaintiff Mara Brazilian ("Ms. Brazilian"), individually and on behalf of all others

Dockets.Justia.com

similarly situated, hereby complains against Defendants Menu Foods Income Fund, Menu Foods Limited, Menu Foods, Inc., Menu Foods Midwest Corporation (collectively the "Menu Foods Defendants") and The Iams Company ("Iams") (all defendants are collectively being referred to as "Defendants") as follows:

## Nature of the Action

1. This action arises out of Defendants' manufacture and sale of almost 100 brands of tainted pet food that has caused severe illness in, or the death of, an as of yet undetermined number of dogs and cats throughout the United States.

2. The Menu Foods Defendants issued a belated recall as a result of an investigation that strongly suggested the food in question contained potentially lethal poison.

3. Defendant Iams has participated in the recall.

4. As a result and proximate cause of ingesting tainted pet food manufactured by Defendants, Ms. Brazilian's two cats, Fred and Barney, have suffered renal failure that will require daily treatment for the rest of their lives.

5. Defendants' actions in selling the tainted food were reckless and in breach of their duty to customers, as explained fully below.

6. On behalf of herself and all others similarly situated throughout the country, Ms. Brazilian accordingly seeks redress for all damages incurred as a result of Defendants' wrongful acts.

## Parties

7. Plaintiff Mara Brazilian is an individual residing in Portland, Maine.

8. Defendant Menu Foods Income Fund is a Canadian mutual trust fund with its principal place of business in Ontario, Canada. The Fund is a 50.8% owner of Defendant Menu

Foods Limited.

9. Defendant Menu Foods Limited is a Canadian corporation with its principal place of business in Ontario, Canada.

10. Defendant Menu Foods, Inc. is a New Jersey Corporation, with its principal place of business in Pennsauken, New Jersey. It is a wholly owned subsidiary of Defendant Menu Foods Limited.

11. Defendant Menu Foods Midwest Corporation is a Delaware Corporation with its principal place of business in Emporia, Kansas. It is a wholly owned subsidiary of Defendant Menu Foods Limited.

12. Defendant The Iams Company ("Iams") is an Ohio Corporation with its principal place of business in Dayton, Ohio.

## Jurisdiction and Venue

13. Jurisdiction is proper in this Court pursuant to 28 U.S.C. § 1332(d) because (1) Plaintiff and members of her putative class are citizens of states different from those of which Defendants are citizens and (2) the amount in controversy exceeds $5,000,000 exclusive of interests and costs.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants transact business in this district and because the acts giving rise to this action occurred in this District.

## Facts

**A.    The Menu Foods Defendants' Products and Wrongful Acts**

15. The Menu Foods Defendants hold themselves out as manufacturers of safe, nutritious, high-quality dog and cat food.

16. The Menu Foods Defendants make numerous express warranties about the quality of their food and manufacturing facilities.

17. For example, the Menu Foods Defendants claim that they "manufacture the private-label, wet pet-food industry's most comprehensive product program with the highest standards of quality" and that they operate "state-of-the-art" manufacturing facilities in the United States and Canada.

18. In late 2006 or early 2007, the Menu Foods Defendants began to receive complaints that pets had died after ingesting food manufactured by the Menu Food Defendants.

19. The Menu Foods Defendants then began testing their food products on animals.

20. Several of the test animals became ill and eventually died after ingesting food manufactured by the Menu Foods Defendants.

21. Despite the Menu Food Defendants' knowledge of the death of animals, the Menu Foods Defendants withheld this information from the public at large, and the public, unaware of this information, continued to provide this food to their pets.

22. It was not until several weeks after these tests that the Menu Foods Defendants announced a recall of "cuts and gravy" style pet foods. Defendant Iams is participating in this recall. It is unknown at the present time how many pets died or were fatally injured in the interim.

23. Since the recall, reports have surfaced in the media indicating that a form of rat poison, aminopterin, which has been banned in the United States, may have tainted the recalled pet food.

24. The amount of aminopterin found in the Menu Foods Defendants' products can cause kidney failure, the very ailment that has caused the illness and/or death of numerous cats

and dogs that have ingested products manufactured by the Menu Foods Defendants.

25. To date, several hundred cases of pet kidney failure have been reported relating to the ingestion of the Menu Foods Defendants' products, and approximately 20% of the affected pets have died.

**B.      Ms. Brazilian and Her Cats**

26. Ms. Brazilian acquired her two Persian Hybrid cats, Fred and Barney, in or around 1992, the last two cats in a litter at a pet store.

27. Over the last fifteen years, Ms. Brazilian, who is unmarried, has developed a close bond with her cats, considering them an integral part of her family.

28. Ms. Brazilian moved to Maine from California in January 2007.

29. Ms. Brazilian had no family in Maine, having moved to the State solely for employment purposes.

30. Thus, Ms. Brazilian's cats were her only companions in Maine when she moved to the State.

31. In or around the end of January 2007, Fred and Barney each became seriously ill.

32. Ms. Brazilian took both Fred and Barney to her veterinarian, who determined in February 2007 that Fred and Barney were both suffering from incurable kidney failure.

33. Ms. Brazilian had been feeding Fred and Barney pouch food that was manufactured by the Menu Foods Defendants and sold by Defendant Iams Company as Iams Select Bites.

34. Several weeks after Fred and Barney became ill the Menu Foods Defendants began the nation-wide recall, and Ms. Brazilian learned that the Iams Select Bites were part of the recall.

35. Neither Fred nor Barney had ever had any significant medical issues during the past 15 years of their lives.

36. Now, both Fred and Barney each have lost approximately half of their body weight, and Ms. Brazilian has to give them intravenous injections of fluid on a daily basis to keep Fred and Barney alive.

37. To date, Ms. Brazilian has spent approximately $1,200 on veterinarian bills associated with Fred and Barney's kidney failure.

38. The continuing treatment of Fred and Barney costs Ms. Brazilian an additional $200-$300 per month, for an undeterminable amount of time.

39. In addition, Ms. Brazilian has suffered significant emotional harm and the loss of companionship of Fred and Barney.

40. The damages Ms. Brazilian has suffered are similar to the damages suffered by all members of the plaintiff class throughout the United States.

**C.** **Class Allegations**

41. Ms. Brazilian brings this action, pursuant to Fed. R. Civ. P. 23 on behalf of herself and a class consisting of herself and all others who purchased pet food products manufactured and/or sold by Defendants, which food products caused injury or death to companion animals.

42. The putative plaintiff class includes thousands, and possibly millions, of pet owners throughout the United States.

43. The aggregate claims of the plaintiff class exceed $5,000,000.

44. The class is so numerous that joinder of all members is impracticable.

45. Ms. Brazilian's claims are typical of claims of the class.

46. Ms. Brazilian will fairly and adequately protect the interests of the class.

47. Common questions of law and fact exist as to all members of the class, and these questions predominate over any questions affecting only individual members.

48. Furthermore, a class action is superior to other available methods for adjudicating this controversy because many members of the class would not be able to vindicate their rights in individual suits because their damages are small relative to the burden and expense of litigating individual actions.

49. This action otherwise meets all prerequisites for class action status.

**Count I**
**(Breach of Warranty)**

50. Ms. Brazilian repeats and realleges Paragraphs 1 through 49 as if set forth fully herein.

51. Defendants expressly and impliedly warranted that products they manufactured and/or sold were safe for dogs and cats.

52. The products manufactured and/or sold by Defendants in fact are not safe for dogs and cats.

53. Defendants' breach of express and implied warranties has caused Ms. Brazilian, and members of the plaintiff class, significant damages.

**Count II**
**(Breach of Contract)**

54. Ms. Brazilian repeats and realleges Paragraphs 1 through 53 as if set forth fully herein.

55. Ms. Brazilian and the class members purchased Defendants' products based on the understanding that the products were safe for their pets to consume, which understanding

formed the terms of a contract with Defendants.

56. Defendants' products were not safe for consumption and caused dogs and cats to become seriously ill.

57. The unsafe nature of Defendants' products constituted a breach of contract that caused Ms. Brazilian and members of the plaintiff class significant damages.

### Count III
### (Product Liability – Defect in Design or Manufacture)

58. Ms. Brazilian repeats and realleges Paragraphs 1 through 57 as if set forth fully herein.

59. Defendants were the manufacturers, sellers, distributors, marketers, and/or suppliers of Defendants products, which products were defective and unreasonably dangerous.

60. Defendants' products were sold, distributed, supplied, manufactured, marketed, and/or promoted by Defendants, and were expected to reach and did reach consumers without substantial change in the condition in which they were manufactured and sold by Defendants.

61. Defendants' products were defective in design or formulation in that when they left the hands of the manufacturers and/or sellers they were unreasonably dangerous.

62. Upon information and belief, Defendants knew of the defective nature of their products but continued to design, manufacture, market, and sell the products to maximize sales and profits at the expense of the public health and safety, in conscious disregard of the foreseeable harm caused by Defendants' products.

63. Ms. Brazilian, and members of the class, purchased Defendants' products for their intended or reasonably foreseeable purpose.

64. The defective and unreasonably dangerous condition of Defendants' products caused Ms. Brazilian and members of the plaintiff class to suffer significant damages.

## Count IV
**(Negligence)**

65. Ms. Brazilian repeats and realleges Paragraphs 1 through 64 as if set forth fully herein.

66. Defendants owed Ms. Brazilian and members of the plaintiff class a duty to reasonably ensure that their products were safe and non-contaminated.

67. Defendants breached this duty by failing to exercise reasonable care in the manufacturing and/or sale of contaminated products.

68. Defendants further breached this duty by failing to timely warn Ms. Brazilian and the plaintiff class after Defendants learned that their products were causing injury to dogs and cats.

69. Defendants' negligence has caused Ms. Brazilian and members of the plaintiff class significant damages.

WHEREFORE, Plaintiff Mara Brazilian, individually and on behalf of all others similarly situated, respectfully requests that the Court certify the class as outlined above; grant judgment in her favor; award damages, including punitive damages and any other damages available under the law; award costs of suit, including reasonable attorney fees; and grant such further relief as this Court deems just and appropriate.

DATED at Portland, Maine this 30th day of March 2007.

        /s/ Len Gulino
Leonard M. Gulino
Daniel J. Mitchell
Michael R. Bosse
Theodore A. Small

Bernstein Shur
100 Middle Street; PO Box 9729

9

          Portland, ME  04104-5029
          207-774-1200

          Attorneys for Plaintiffs

10