BRAZILIAN v. MENU FOODS INCOME FUND et al
03/26/2007  13:42  915 568 7890
03/26/2007 1 Case 2:07-cv-00064-JZS  Document 1  WENGER TORISE Filed 04/04/2007  Page 1 of 40  Ø003/017
Doc. 7 Att. 2

1    Plaintiff Shirley Sexton ("Plaintiff"), individually and on behalf of all others

2    similarly situated, alleges by and through her attorneys, upon information and

3    belief, as follows:

4                          **NATURE OF THE ACTION**

5    1.    Plaintiff brings this class action on behalf of herself and a class of

6    consumers and entities who purchased brands of pet food manufactured by

7    Defendants that caused pets to suffer severe illness or death. Pet owners, believing

8    Defendants' products to be safe for pet consumption, incurred substantial expenses

9    relating to the purchase of the pet food and to the veterinary monitoring and

10   treatment that became necessary after their pets consumed Defendants' pet food.

11   Such expenses were even more extreme for those pet owners whose pets became

12   terminally ill after consuming Defendants' pet food products. Such costs arose and

13   were exacerbated by the undue amount of time taken by Defendants to announce

14   the dangers associated with its dog and cat foods. Although Defendants knew that

15   pet illnesses and deaths could be related to their pet foods, Defendants waited for

16   nearly a month before telling the public and the Food and Drug Administration

17   (FDA) that it was recalling its products. Defendants' lethal products, and the

18   companies' excessive delay in warning consumers and regulatory agencies as to its

19   dangers, resulted in significant financial loss to thousands of pet owners.

20                       **JURISDICTION AND VENUE**

21   2. The Court has original jurisdiction over this class action pursuant to 28

22   U.S.C. § 1332(d)(2).

23   3. Venue in this judicial district is proper pursuant to 28 U.S.C. § 1391(a)(1)

24   because Plaintiff resides in this judicial district. Venue is also proper pursuant to

25   28 U.S.C. § 1391(a)(2) because a substantial part of the events or omissions giving

26   rise to the claim occurred in this judicial district.

27   4. The members of the putative Class have suffered aggregate damages

28   exceeding $5,000,000, exclusive of interest and costs.

-2-
CLASS ACTION COMPLAINT

**PARTIES**

5.  Plaintiff Shirley Sexton is a resident of Los Angeles County, California.

6.  Defendant Menu Foods Income Fund is a Canadian company with its principal executive offices located at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

7.  Defendant Menu Foods, Inc. is a New Jersey corporation with its principal executive offices located at 9130 Griffith Morgan Lane, Pennsauken, New Jersey 08110.

8.  Defendant Menu Foods Midwest Corporation is a Delaware corporation with its principal executive offices located at P.O. Box 1046, 1400 East Logan Avenue, Emporia, Kansas 66801.  Menu Foods Midwest Corporation is a wholly-owned subsidiary of Menu Foods, Inc.

9.  Unless otherwise stated, Defendants Menu Foods Income Fund, Menu Foods, Inc., and Menu Foods Midwest Corporation are collectively referenced as "Defendants."

10. At all times herein mentioned, Defendants were the agents, principals, employees, servants, partners, joint venturers, and representatives of each other.  In doing the acts hereinafter alleged, they each were acting within the scope and course of their authority as such agents, principals, employees, servants, partners, joint venturers, and representatives, and were acting with the permission and consent of the other Defendant.

**FACTUAL ALLEGATIONS**

11.  Defendants manufacture and sell pet food internationally and are the biggest supplier of pet food in North America.

12.  Defendants sell pet food under nearly 100 different brand names, some of which are the most popular brands of dog and cat food in the industry – e.g., Iams, Eukanuba, Science Diet, among others.

13.  Defendants sell their brands internationally and in some of the largest

1    major retail chains in the United States, such as Wal-Mart, Safeway, Kroger,

2    PetSmart and Meijer.

3        14. On March 16, 2007, Defendants, in conjunction with the Food and Drug

4    Administration (FDA), announced a massive immediate recall of approximately 60

5    million containers of "cuts and gravy" pet food (pet food consisting of pieces of

6    meat in gravy) throughout the United States based on widespread reports of pet

7    illness and death, mostly related to kidney failure. The recall covers all "cuts and

8    gravy" we pet food produced and distributed by Defendants, including over ninety

9    different brands of dog and cat food. Some of the brands recalled include, Iams,

10   Eukanuba, Best Choice, Paws, and Nutro Max. Defendants' recall is the largest pet

11   food recall in United States history.

12       15. However, Defendants waited an excessive period of time before deciding

13   to recall its harmful and lethal products. Defendants first started receiving

14   complaints of pet illnesses and deaths as early as late-February, almost a full month

15   before deciding to recall its products. *See, e.g.*, CBSNews.com, *Pet Food Co.*

16   *Knew of Problem Last Month*, March 20, 2007, *at*

17   http://www.cbsnews.com/stories/2007/03/20/national/main2587087.shtml (last

18   viewed March 22, 2007). Rather than announcing its products could be harmful to

19   pets as soon as it learned of pet illnesses and deaths, Defendants decided to conduct

20   its own testing. Defendants conducted tests involving over 50 animals to observe

21   reactions to its pet foods. Approximately one in six of the animals tested died. Yet,

22   Defendants again waited until as many as seven test subjects died after eating its pet

23   food before finally submitting its findings to the FDA and deciding that a recall and

24   announcement to the public would be necessary.

25       16. Due in no small part to this unnecessary and protracted delay, as of

26   March 21, 2007 there have been at least seventy-two reported pet deaths from

27   kidney failure nationwide and additional deaths continue to be reported by the hour.

28   One source indicated that 1,715 dogs and cats were either sick or dead as a result of

1   the recalled food products.  *See* http://www.petconnection.com/blog/ (last viewed

2   March 22, 2007).

3       17.  Pet owners purchased Defendants' products believing them to be safe for

4   pet consumption and beneficial to their pets.  However, the "cuts and gravy" style

5   pet food that pet owners across the nation have fed their pets has proved to be toxic,

6   causing renal failure in cats and dogs as well as physical disorders such as

7   dehydration, diarrhea, loss of appetite, increased thirst, lethargy, and vomiting.

8       18.  Pet owners have incurred substantial expenses relating both to the

9   purchase of Defendants' pet food and from the medical costs associated with

10  monitoring and treating pets who have consumed, or were thought to have

11  consumed, Defendants' contaminated food products.  Indeed, several pet owners

12  have accrued veterinary bills that have climbed into the several thousands of

13  dollars.  Furthermore, for those pet owners whose pets became terminally ill, they

14  were forced to incur additional costs relating to their pets death, such as euthanizing

15  and, for some, burying or cremating their pet.

16      19.  Currently, Defendants still have not identified the cause of the food

17  toxicity.  However, aminopterin, a substance found in rat poisons, was recently

18  discovered in the recalled foods.

19      20.  In addition, pet owners who have become increasingly concerned about

20  their pet's health after learning of the recall have received little to no relief from

21  Defendants.  Defendants have failed to manage the high volume of incoming

22  complaints.  Since instituting the recall, pet owners have been largely unable to

23  reach Defendants' customer service representatives, often encountering busy

24  signals or voicemail messages.  *See, e.g.*, Thejournalnews.com, *Pet Owners*

25  *Growling over Food Recall*, March 20, 2007, *at*

26  http://www.thejournalnews.com/apps/pbcs.dll/article?AID=/20070320/BUSINESS

27  01/703200345/1066 (last viewed March 22, 2007).  To be sure, Defendants have

28  been criticized for not being cooperative with customers, for not getting helpful

1   information out to the public sooner and for failing to "get control of the crisis . . .

2   employ[ing] a bunker mentality in times of trouble." Joseph R. Perone, The Star-

3   Ledger, *Menu Foods Fails Test in Crisis Management*, March 21, 2007, *available*

4   *at* http://www.nj.com/starledger/stories/index.ssf?/base/business-

5   6/117445554784980.xml&coll=1 (last viewed March 23, 2007).

6       21. Since the recall, Defendants have received scores of complaints and

7   questions from consumers who have purchased its contaminated pet food products

8   and from those whose pets have become ill or died after consuming those products.

9       22. The complaints found throughout the Internet and in many of the news

10  stories mentioned above each contain the same common theme of consumers who

11  unwittingly purchased Defendants' food products and who were forced to take their

12  pets to veterinarians for medical treatment after their pets became extremely, and

13  sometimes terminally ill.

14      23. Plaintiff Shirley Sexton regularly purchased *Special Kitty* brand wet pet

15  food from Wal-Mart Stores, Inc. before the recall was announced.

16      24. Four cats lived in Ms. Sexton's household. Two of Ms. Sexton's three

17  cats, Red and Kelso, ate the *Special Kitty* pet food every day. Spike, a cat

18  belonging to Ms. Sexton's daughter, also ate *Special Kitty* pet food on a daily basis.

19      25. On or March 16 and March 17, 2007, Shirley noticed that both Red and

20  Kelso were ill. She took Red and her two other cats in to the veterinarian. Two of

21  the three cats, including Kelso, were initially found to be healthy. However, the

22  veterinarian discovered Red had kidney failure and decided to keep Red overnight.

23  On March 20, 2007, the veterinarian determined that Red's condition had

24  significantly worsened and Ms. Sexton, in order to spare her pet from suffering any

25  further, made the decision to have Red euthanized that same day.

26      26. After her experience with Red, Ms. Sexton also brought her daughter's

27  cat, Spike, to the veterinarian for testing. The veterinarian determined that Spike –

28  who also ate Wal-Mart's *Special Kitty* brand food – was suffering from kidney

1  failure.  As of the date of this complaint, Spike remains in the veterinary hospital.

2  27.  To date, Ms. Sexton has incurred at least $1,100 in veterinary bills.

3  **CLASS ACTION ALLEGATIONS**

4  28.  Plaintiff brings this action as a class action pursuant to Federal Rule of

5  Civil Procedure 23(a) and 23(b) on behalf of herself and all others similarly situated

6  as members of the following class (the "Class"): All persons and entities that

7  purchased "cuts and gravy" style dog or cat food manufactured, distributed,

8  marketed and/or sold by Defendants.

9  29.  Subject to additional information obtained through further investigation

10  and discovery, the Class definition may be expanded or narrowed by amendment or

11  amended complaint.  Specifically excluded from the proposed Class are business

12  entities for purposes of Plaintiff's claim for relief under the California Consumers

13  Legal Remedies Act, Civil Code § 1750, *et seq*.  Also specifically excluded are

14  Defendants, their officers, directors, agents, trustees, parents, children,

15  corporations, trusts, representatives, employees, principals, servants, partners, joint

16  venturers, or entities controlled by Defendants, and their heirs, successors, assigns,

17  or other persons or entities related to or affiliated with Defendants and/or their

18  officers and/or directors, or any of them; the Judge assigned to this action, and any

19  member of the Judge's immediate family.

20  30.  **Numerosity**.  The members of the Class are so numerous that their

21  individual joinder is impracticable.  Plaintiff is informed and believes, and on that

22  basis alleges, that the proposed class contains tens of thousands of members.  The

23  precise number of Class members is unknown to Plaintiff.  The true number of

24  Class members are known by Defendants, however, and thus, may be notified of

25  the pendency of this action by first class mail, electronic mail, and by published

26  notice.

27  31.  **Existence and Predominance of Common Questions of Law and**

28  **Fact**.  Common questions of law and fact exist as to all members of the Class and

1   predominate over any questions affecting only individual Class members.  These
2   common legal and factual questions include, but are not limited to, the following:

3       a.    Whether Defendants intentionally, recklessly or negligently authorized
4           injurious pet food to enter the market;

5       b.    Whether Defendants failed to properly test their "cuts and gravy" style
6           dog and cat food before market entry of such food;

7       c.    Whether Defendants intentionally, recklessly or negligently delayed in
8           instituting a recall of its "cuts and gravy" style dog and cat food;

9       d.    Whether Defendants' recall is adequate and properly notifies
10          potentially affected consumers;

11      e.    Whether Defendants' conduct constituted unlawful, unfair, or
12          fraudulent business practices in violation of Cal. Bus. & Prof. Code
13          §§ 17200, et seq., as alleged herein;

14      f.    Whether Defendants have been unjustly enriched as a result of their
15          conduct, as alleged herein;

16      g.    Whether Plaintiff and members of the Class have sustained damages as
17          a result of Defendants' conduct, and, if so, what is the appropriate
18          measure of damages; and

19      h.    Whether Plaintiff and members of the Class are entitled to punitive
20          damages, and, if so, in what amount.

21      32.  **Typicality**.  Plaintiff's claims are typical of the claims of the members
22  of the Class in that Plaintiff and each member of the Class purchased "cuts and
23  gravy" style dog or cat food manufactured, distributed, marketed and/or sold by
24  Defendants.

25      33.  **Adequacy of Representation**.  Plaintiff will fairly and adequately
26  protect the interests of the members of the Class.  Plaintiff has retained counsel
27  experienced in complex consumer class action litigation, and Plaintiff intends to
28  prosecute this action vigorously.  Plaintiff has no adverse or antagonistic interests

-8-
CLASS ACTION COMPLAINT

1    to those of the Class.

2    34.  **Superiority**.  A class action is superior to all other available means for

3    the fair and efficient adjudication of this controversy.  The damages or other

4    financial detriment suffered by individual Class members is relatively small

5    compared to the burden and expense that would be entailed by individual litigation

6    of their claims against the Defendants.  It would thus be virtually impossible for

7    Class, on an individual basis, to obtain effective redress for the wrongs done to

8    them.  Furthermore, even if Class members could afford such individualized

9    litigation, the court system could not.  Individualized litigation would create the

10   danger of inconsistent or contradictory judgments arising from the same set of facts.

11   Individualized litigation would also increase the delay and expense to all parties

12   and the court system from the issues raised by this action.  By contrast, the class

13   action device provides the benefits of adjudication of these issues in a single

14   proceeding, economies of scale, and comprehensive supervision by a single court,

15   and presents no unusual management difficulties under the circumstances here.

16   35.  In the alternative, the Class may be certified because:

17       a.  the prosecution of separate actions by individual Class members

18           would create a risk of inconsistent or varying adjudication with respect

19           to individual Class members that would establish incompatible

20           standards of conduct for the Defendants;

21       b.  the prosecution of separate actions by individual Class members would

22           create a risk of adjudications with respect to them that would, as a

23           practical matter, be dispositive of the interests of other Class members

24           not parties to the adjudications, or substantially impair or impede their

25           ability to protect their interests; and/or

26       c.  Defendants have acted or refused to act on grounds generally

27           applicable to the Class thereby making appropriate final and injunctive

28           relief with respect to the members of the Class as a whole.

36.  Adequate notice can be given to Class members directly using information maintained in Defendants' records, or through publication notice.

37.  Defendants benefited from the sale of its "cuts and gravy" style dog and cat food to Plaintiff and the Class.  The benefit to Defendants can be identified from the sale of such pet food to Plaintiff and the Class and that such monies can be restored to Plaintiff and the Class.  Such monies are the property of the Plaintiff and the Class.  All or a portion of this benefit retained by Defendants is money in which Plaintiff and the Class have an ownership interest.  Plaintiff and the Class were injured and lost money as a result of Defendants' unfair, unlawful and fraudulent business practices described herein.

## FIRST CLAIM FOR RELIEF

### [Violation of Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*]

38.  Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

39.  Defendants are each a "person" as defined by Cal. Civ. Code § 1761(c).

40.  Plaintiff and the proposed Class members are "consumers" within the meaning of Cal. Civ. Code § 1761(d).

41.  Plaintiff's purchase of dog and cat food manufactured, distributed, marketed and sold by Defendants constitute "transactions" within the meaning of Civil Code section 1761(e) and 1770.

42.  Defendants' conduct violated and continues to violate the CLRA in at least the following respects:

    a.      In violation of Section 1770(a)(1) of the CLRA, Defendants misrepresented the source, sponsorship, approval or certification of goods or services; and

b.      In violation of Section 1770(a)(5) of the CLRA, Defendants represented that its goods or services sponsorship, approval, characteristics, uses or benefits which they do not have.

43.  Defendants engaged in these unfair or deceptive acts and practices with the intent that they result, and which did result, in the sale of dog and cat food to Plaintiff and the Class.

44.  In engaging in unfair or deceptive conduct in violation of the CLRA, Defendants actively concealed and intentionally failed to disclose material facts about the characteristics of their dog and cat food, and further represented that such food was suitable for pet consumption.

45.  As a result of Defendants' acts and practices as alleged in this Complaint, Plaintiff seeks an Order enjoining Defendants from continuing to engage in unlawful, unfair or fraudulent business practices, and any other act prohibited by law.  Plaintiff has contemporaneous with this filing provided notice to Defendants, and will amend to add claims for damages under the CLRA if Defendants do not take appropriate corrective action.

## SECOND CLAIM FOR RELIEF
### [Negligence]

46.  Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein.  Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

47.  Defendants owed a duty to Plaintiff and the Class to provide pet food safe and suitable for pet consumption.

48.  Through their failure to exercise due care, Defendants were negligent in manufacturing, distributing, marketing and selling pet food to Plaintiff and the Class.

49.  Defendants failed to implement adequate quality control and adequate testing of its pet food that they introduced into the stream of commerce for sale to Plaintiff and the Class and for consumption by their pets.

50. Defendants knew, or should have known, that their pet food, as described above, presents an unreasonable and unacceptable risk of injury or death to pets, and would result in foreseeable and avoidable damage.

51. The losses and damages described herein were foreseeable and avoidable.

52. Defendants' negligence proximately caused the losses and damages to Plaintiff and the Class.

### THIRD CLAIM FOR RELIEF
**[Violation of the California Unfair Competition Law, Business & Professions Code §§ 17200, *et seq.*]**

53. Plaintiff hereby incorporates by reference each of the preceding allegations as though fully set forth herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

54. Defendants' acts and practices, described herein, constitute unlawful, unfair or fraudulent business practices in violation of the Unfair Competition Law, Business & Professions Code sections 17200 et seq ("UCL").

55. The utility of Defendants' manufacturing, distribution, marketing and/or sale of contaminated dog and cat food is significantly outweighed by the gravity of the harm they impose on Plaintiff and the Class. Defendants' acts and practices are oppressive, unscrupulous or substantially injurious to consumers.

56. The above-described unfair, unlawful and fraudulent business practices conducted by Defendants present a threat and likelihood of harm and deception to members of the Class in that Defendants have systematically perpetrated and continue to perpetrate the unfair, unlawful and fraudulent conduct upon members of the public by engaging in the conduct described herein.

57. Plaintiff and the Class have suffered harm as a proximate result of the wrongful conduct of the Defendants alleged herein, and therefore bring this claim for relief for restitution and disgorgement. Plaintiff is a person who has suffered

injury in fact and has lost money and property as a result of such unfair

competition.

58.   Pursuant to Business and Professions Code sections 17200 and 17203,

Plaintiff, on behalf of herself and the Class, seeks an order of this Court: enjoining

Defendants from continued manufacture, distribution, marketing and sale of "cuts

and gravy" style dog and cat food in an unfair, unlawful and fraudulent manner, and

an order enjoining Defendants from collecting money from the Class from the sale

of pet food.  Plaintiff further requests an order awarding Plaintiff and the Class

restitution and disgorgement of profits acquired by Defendants by means of such

unlawful acts and practices, so as to deter Defendants and to rectify Defendants'

unfair and unlawful practices and to restore any and all monies to Plaintiff and the

Class, which are still retained by Defendants, plus interest and attorneys' fees and

costs pursuant to, *inter alia*, Code of Civil Procedure section 1021.5.

## FOURTH CLAIM FOR RELIEF
### [For Unjust Enrichment]

59.  Plaintiff hereby realleges and incorporates by reference all paragraphs

previously alleged herein.  Plaintiff asserts this claim against each and every

Defendant on behalf of herself and the Class.

60.  Defendants have received, and continue to receive, a benefit at the

expense of Plaintiff and members of the Class.  Defendants have knowledge of this

benefit.

61.  Defendants have charged and collected from consumers, including

Plaintiff and members of the Class, money for dog and cat food that endangers the

lives of their pets.  Defendants thus have received benefits that they have unjustly

retained at the expense of Plaintiff and members of the Class.

62.  As a direct and proximate result of Defendants' unlawful acts and

conduct, Plaintiff and members of the Class were deprived of the use of their

monies that was unlawfully charged and collected by Defendants, and are therefore

entitled to restoration of their monies.

## FIFTH CLAIM FOR RELIEF
### [Breach Of Express Warranty]

63. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

64. Defendants expressly warranted that their "cuts and gravy" style pet food was suitable and safe for pet consumption.

65. Defendants also expressly warranted that "it manufacturer[s] the private-label wet pet-food industry's most comprehensive product program with the highest standards of quality."

66. Plaintiff and the Class were induced by Defendants' marketing, advertising, promotion and labeling of the pet food as suitable "food" to rely upon such express warranty, and, in fact, relied upon the untrue warranty in purchasing the recalled pet food and feeding it to their pets.

67. Plaintiff and the Class were damaged as a proximate result of Defendants' breach of their express warranty.

## SIXTH CLAIM FOR RELIEF
### [Breach Of Implied Warranty]

68. Plaintiff hereby realleges and incorporates by reference all paragraphs previously alleged herein. Plaintiff asserts this claim against each and every Defendant on behalf of herself and the Class.

69. Defendants are merchants under section 2-104 and 2-314 of the Uniform Commercial Code.

70. Through their marketing, advertising, promotion and labeling of their "cuts and gravy" style pet food, Defendants impliedly warranted that such pet food was fit for the ordinary purpose for which it was intended, including to safely nourish pets with risk of illness or death, pursuant to section 2-314 of the Uniform

1   Commercial Code.

2       71.  Through their marketing, advertising, promotion and labeling,

3   Defendants knew that Plaintiff and the Class would purchase their pet food for the

4   ordinary purpose of providing nourishment to their pets.

5       72.  Defendants manufactured, distributed, marketed, advertised, promoted

6   and sole their pet food for the ordinary purpose for which it was purchased by

7   Plaintiff and the Class.

8       73.  Plaintiff and the Class relied upon Defendants' representations and

9   warranties, and purchased and used Defendants' pet food for the ordinary purpose

10  for which it was sold.

11      74.  Defendants' pet food purchased by Plaintiff and the Class were unfit for

12  their ordinary purpose when sold.  Such food was sold while presenting a risk of

13  risk of illness or death to pets.  Defendants have accordingly breached the implied

14  warranty of merchantability by selling such unfit pet food.

15      75.  Plaintiff and the Class were damaged as a proximate result of

16  Defendants' breach of warranty.

17                          **PRAYER FOR RELIEF**

18      **WHEREFORE**, Plaintiff, on behalf of herself and all others similarly

19  situated, prays for judgment against Defendants as follows:

20      1.      For an order certifying the Class under Rule 23 of the Federal Rules of

21              Civil Procedure and appointing Plaintiff and her counsel of record to

22              represent the Class;

23      2.      For restitution, disgorgement and/or other equitable relief as the Court

24              deems proper;

25      3.      That pursuant to sections 17203 and 17204 of the Business and

26              Professions Code, Defendants be permanently enjoined from

27              performing or proposing to perform any of the aforementioned acts of

28              unfair, unlawful and fraudulent business practices;

4.    For compensatory damages sustained by Plaintiff and all others similarly situated as a result of Defendants' unlawful acts and conduct;

5.    For punitive damages pursuant to Civil Code § 1780(a)(4);

7.    For a permanent injunction prohibiting Defendants from engaging in the conduct and practices complained of herein;

8.    For pre-judgment and post-judgment interest;

9.    For reasonable attorneys' fees and costs of suit, including expert witness fees; and

10.    For such other and further relief as this Court may deem just and proper.

## **JURY DEMAND**

To the full extent available, Plaintiff demands a trial by jury.

Dated:  March 26, 2007            **WEXLER TORISEVA WALLACE LLP**


By _____
        Mark J. Tamblyn

1610 Arden Way, Suite 290
Sacramento, California 95815
Telephone: (916) 568-1100
Facsimile: (916) 568-7890

Kenneth A. Wexler
**WEXLER TORISEVA WALLACE LLP**
One North LaSalle St., Suite 2000
Chicago, Illinois 60602
Telephone:  (312) 346-2222
Facsimile: (312) 346-0022

Stuart C. Talley
**KERSHAW, CUTTER, & RATINOFF, LLP**
980 9th Street, 19th Floor
Sacramento, California  95814
Telephone: (916) 448-9800
Facsimile: (916) 669-4499

*Attorneys for Plaintiff and the Class*

-16-
CLASS ACTION COMPLAINT

# Exhibit B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TENNESSEE
## KNOXVILLE DIVISION

| | | |
|---|---|---|
| **LIZAJEAN HOLT,** | ) | |
| | ) | |
| **Individually, and on behalf of similarly** | ) | |
| **situated persons,** | ) | |
| | ) | **No. _____** |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Class action** |
| | ) | |
| **MENU FOODS, INC.,** | ) | **JURY DEMAND** |
| | ) | **CLASS ACTION** |
| **Defendant.** | ) | |

### CLASS ACTION COMPLAINT

**I. Class Action**

1. Plaintiff, individually and as representative of a Class of similarly situated

persons more defined below, brings suit against the named Defendant for offering for sale

and **selling** to Plaintiff and Class members pet food and food products – "cut and gravy"

pet products – formally **recalled** on March 16, 2007. Defendant is a corporation doing

business and operating in the United States. Defendant recalled cat and dog food

products that are sold under numerous brands by several national chain stores in

Tennessee and other States in the United States. The pet food products were produced

by Defendant(s), a private label manufacturer, labeled by the Defendant, and then

distributed and ultimately sold to Plaintiff, Class Members, and others. Defendant issued

or caused to be issued a press release announcing the recall, and the United States Food

and Drug Administration issued a press release the same day. These pet food products

were intended to be placed in the stream of commerce and distributed and offered for sale

and sold to Plaintiff and purchasers in Tennessee and the United States and fed to their

pets, cats and dogs.

## II. Jurisdiction and Venue

2. This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 and

subsection (d), and the Class Action Fairness Act of 2005, Pub. L.109-2 (Feb. 18, 2005);

and over supplemental state law claims pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court and judicial district pursuant to 28 U.S.C. §1391

and/or Pub. L.109-2 because a part or substantial part of the events or omissions giving

rise to the claim occurred in this judicial district, or a substantial part of property that is

the subject of the action is situated in this judicial district.

4. In this judicial district, Plaintiff purchased the recalled pet food product made

by or for Defendant, and her pet ate or consumed it.   Thousands of other

consumers/customers – including Plaintiff and other Class Members – purchased the

recalled or contaminated products in this judicial district from retailers that Defendant, its

agents, affiliates, or others it or they controlled sold or made available to them.  In turn,

retailers or others sold these recalled products to the general public, including Plaintiff,

Class members and other purchasers. These products were purchased for consumption by

the pets of Plaintiff and the Class members.  Defendant made or caused these products to

be offered for sale and sold to the public, including Plaintiff.

5. Rule 23 of the Federal Rules of Civil Procedure applies to class actions as

well.

## III. Plaintiff

2

6.  At all times material hereto, Plaintiff Lizajean Holt was and is a citizen of the

State of Tennessee and the United States and resides in Knox County, Tennessee.

**IV. Plaintiff's Purchase(s)/Defendant's Recall**

7.  Plaintiff purchased recalled brands of Pet Pride and Iams pet food from a

national chain grocery store, Kroger, operating in Knox County, Tennessee.  Kroger, like

other retailers, did not alter the product produced by the Defendant in any way prior to

selling it to Tennessee consumers and other consumers throughout the United States.

8.  Without knowing that Defendants would recall the product after it was offered

for sale and sold to her, Plaintiff purchased and fed the product(s) to her cat, her pet.  Her

pet became lethargic and began drinking large amounts of water and Plaintiff

discontinued feeding the Defendant's products to her cat prior to the recall notice.

Plaintiff and thousands of other consumers will now face veterinary bills to have their

pets evaluated for kidney damage.

9.  Before her purchase, Defendant never warned Plaintiff that the pet food

product that she purchased for feeding her pet may or would cause it have health

problems or concerns or that she would have to take her pet to a veterinarian due to a

health concern relating to or resulting from the tainted pet food.

10.  On or on about March 16, 2007, Defendant issued a recall for certain pet food

for cats and dogs that it manufactured in plants that it controlled, owned, operated, or

managed in the United States.

11.  Defendant's business consists substantially of providing private label pet

foods at its plants or pet foods under other brands, not its own.  In turn, Defendant's

products are sold under a variety of labels or brands listed on its website as of March 17, 2007 and set forth below.

12.  The product that Plaintiff purchased at a Kroger in Knoxville was a product recalled by Defendant.

13.  After Plaintiff purchased the pet food and fed it to her cat, she learned about the recall and the actual or potential problems and concerns from purchasing and feeding the product to her pet.

14.  Plaintiff bought the product(s) for their intended purposes: to feed her pet.

15.  Defendant placed these pet products in the stream of commerce in Tennessee and elsewhere expecting that consumers such as Plaintiffs, the Class members, and the general public would feed these products to their pets.

## V. Defendant, Its Business, and the Recall

16.  At all times material hereto, Defendant Menu Foods, Inc. was and is a New Jersey corporation with its principal place of business in the State of New Jersey, specifically located at 9130 Griffith Morgan Lane, Pennsauken NJ 08110.  Defendant is ultimately owned or controlled by Menu Foods Income Group, an Ontario based legal entity.  Some of Defendant's high managerial or officers or agents with substantial authority are also high managerial officers or agents of Menu Foods Income Group. Defendant may be served through the Secretary of State for Tennessee or as provided by law.

17.  Defendant Menu Foods, Inc. owns, controls, is related to or an affiliate of a firm with plants where the pet food is manufactured or processed that are located in the United States.  These plants are located in Emporia, Kansas and, Pennsauken, New

4

Jersey, the place of manufacture where the pet products were recalled, and/or at other locations in the United States.

18. Defendant is the leading North American private label/contract manufacturer of wet pet food products sold by supermarket retailers, mass merchandisers, pet specialty retailers, and other wholesale and retail outlets, including Wal-Mart, Safeway, Kroger, PetSmart, Inc., Giant Food, and other large retail chains, and has provided pet food products to or for Proctor & Gamble, Inc.  It produces hundreds of millions of containers of pet food annually.

19. Defendant has manufactured or produced pet food for private labels for about 17 of the 20 leading retailers in the United States.

20. Defendant's business includes manufacturing, producing, distributing, or selling cat food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Best Choice, Companion, Compliments, Demoulus Market Basket, Eukanuba, Fine Feline Cat, Food Lion, Food Town, Giant Companion, Hannaford, Hill Country Fare, Hy-Vee, Iams, Laura Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Nutriplan, Nutro Max Gourmet Classics, Nutro Natural Choice, Paws, Pet Pride, President's Choice, Priority, Sav-a-Lot, Schnucks, Science Diet Feline Savory Cuts Cans, Sophsitacat, Special Kitty US, Springfield Prize, Sprout, Total Pet, Wegmans, Western Family, White Rose, and Wynn Dixie.

21. Defendant's business includes manufacturing, producing, distributing, or selling dog food under various brands or labels, and/or for third party firms, including: America's Choice, Preferred Pets, Authority, Award, Best Choice, Big Bet, Big Red, Bloom, Bruiser, Cadillac, Companion, Demoulus Market Basket, Eukanuba, Food Lion,

Giant Companion, Great Choice, Hannaford, Hill Country Fare, Hy-vee, Iams, Laura

Lynn, Li'l Red, Loving Meals, Meijer's Main Choice, Mixables, Nutriplan, Nutro Max,

Nutro Ultra, Nutro, Ol'Roy US, Paws, Pet Essentials, Pet Pride – Good & Meaty,

President's Choice, Price Chopper, Priority, Publix, Roche Brothers, Sav-a-Lot,

Schnucks, Shep Dog, Sprout, Statler Bros, Total Pet, Western Family, White Rose, Wynn

Dixie, and Your Pet.

    22.  On Defendant's website as of March 17, 2007, it listed by brands, the size of

the container or pouch, the dates of manufacture, and the products subject to recall.

Thus, each container or pouch and size of each brand or label listed – subject to the recall

above – was noted specifically on its web site.  Thus, a 3 ounce can or pouch of Pet Pride

Pouch Mixed Grill 24 X 3 with sale by date of March 8, 2009, with a specified "UPC"

number was one of about 150 separate Pet Pride labeled cat food that Defendant recalled.

The other brands also generally listed numerous separate pouches or containers bearing

the major private label or brand with a further sub-description similar to the manner

described above, by brand or label.

    23.  After reports or complaints from pet owners about symptoms – such as

vomiting or lethargy – suggesting kidney failure in their dogs and cats and/or after reports

of deaths of certain pets, from or through its Canadian office or affiliation, Defendant

caused or issued a recall of certain specified pet products, reportedly totaling between 40

and 60 million cans.

    24.  Defendant also advised a governmental agency of the United States about the

recall and certain events leading to the recall, namely the Food and Drug Administration

(FDA).

25.  Defendant produces over 1,000,000,000 pouches or containers of pet food products each year, a substantial portion of which is sold or offered for sale in Tennessee or for Tennesseans who purchase the products for their pets.  Many consumers who fear for the health of their pets will no longer have the product because it has been fed to the pets.

26.  Defendant knows or should know that national, regional, and/or local distributors will distribute these finished pet food products that it manufactures or processes to retailers to offer them for sale in Tennessee to Tennesseans who purchase and buy them for their pets for consumption by their pets in the State of Tennessee and in this judicial district.

27.  Defendant knows or understands that millions or tens of millions of cans or pouches of the pet food products that it manufactures or produces will be advertised, promoted, and sold in Tennessee and this judicial district, including a significant or substantial part of the recalled pet food.

28.  Defendant knows or understands that the promotion and advertising of pet food produced at its plants in part targets consumers and customers in Knox County, in this judicial district, in the State of Tennessee, regionally, or nationally.

29.  Defendant makes or produces the pet food products in its plants with a purpose or design that consumers and customers will purchase them, regardless of brand or label name, place of purchase, or place where pets actually consume them.

30.  Defendant makes or produces for third parties well-known, lesser known, and/or premium or discount brands or labels of pet foods and knows that customers and consumers will ultimately purchase them to feed to their pets.

7

31.   Defendant desires that consumers and others who purchase or consider purchasing a pet food product made or produced in one of its plants, by whatever label or brand, believe that the pet food product is safe for their pets to eat.

32.   In the last few days, Defendant has recalled specified pet food products that consumers and customers purchased from a time beginning about December 3, 2006 and concluding about March 6, 2007.

33.   Class members and others have purchased the pet products that were recalled across the United States, in Tennessee, and in this judicial district.

34.   Class members and others who purchased or fed Defendant's products to their pets did so in this judicial district, in Tennessee, and in the United States.

35.   Some class members or others have already taken their pets to a veterinarian for treatment or diagnosis related to their pets eating the recalled pet food and more will do so as word of the recall spreads. For instance, the Knoxville NewsSentinel carried a prominent story about the recall and the potential dangers to the pets of East Tennessee citizens in its Sunday, March 18, 2007 edition.

36.   Class members have suffered and will suffer injuries, losses, or damage as a result of the recall and/or feeding their animals the food that was recalled.

37.   There have been other reported incidents of pet food being recalled as a result of possible or actual concerns or problems with the pet food and its or their effects on pets.  Defendant knew or should have known about the risks and possible injury.

**VI. Plaintiff, Class Members, and Others' Losses, Damages, and Injuries**

38.   As a result of their purchases of the pet food recalled or subject to recall, set forth above, Plaintiff, Class members, and others have suffered and will suffer a loss,

damage, injury, and sustained damages, including consequential and incidental damages, such as costs of purchasing the contaminated food product and replacing it with a safe food product, including sale tax or a similar tax, costs of making an additional trip to a retail store to purchase safe, non-contaminated pet food, the price of postage to secure a refund offered by Defendant, the cost of veterinarians, treatment, medicines and the trip(s) to make such visits for diagnosis and treatment, and otherwise.

## VII. Breach of Warranties & Remedies

39. Defendant breached express warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

38. Defendant breached implied warranties to Plaintiff, the Class, and others, and violated the Uniform Commercial Code.

40. Defendant breached the implied warranty of fitness for a particular purpose by claiming certain of the pet food that it manufactured or produced and was recalled were fit and safe for consumption by pets and thereby violated the Uniform Commercial Code.

41. Defendant breached the implied warranty of merchantability. In fact, the pet food subject to recall and purchased or used by Plaintiff, the Class, and others was not merchantable. This breach violated the Uniform Commercial Code.

42. Plaintiffs are entitled to the remedies for breach authorized by the Uniform Commercial Code and other law.

## VIII. Negligence

43. Defendants owed Plaintiff and the Class a duty to only offer safe, non-contaminated products for consumption by pets and offered for sale and sold in the stream of commerce.

44. Though its failure to exercise due care Defendant owed Plaintiff, the class, and others, Defendant was negligent in producing, processing, manufacturing, and offering for sale the recalled pet food and pet food products it offered for sale and sold to Plaintiff, the class, and others.

45. Defendant failed to use sufficient quality control, to do adequate testing, to perform proper manufacturing, production, or processing, or failed to take sufficient measures to prevent the pet food products that were recalled from being offered for sale, sold, or fed to pets.

46. Defendant knew or should have known that the pet food that was recalled presented an unacceptable risk to the pets of the Plaintiff, the Class, and others and would result in damage that was foreseeable and reasonably avoidable.

47. The loss, damage, and injuries were foreseeable.

48. Defendant's negligence proximately caused the loss, damage, injury, and damages to Plaintiff, the Class, and others.

**IX. Statutory Unfair or Deceptive Trade Practices Act**

49. Plaintiff, the Class, purchasers, others, and Defendant are each a "person" within the meaning of Tenn. Code Ann. §47-18-103.

50. Defendant's offer for sale or sale of their recalled pet food products is in or affects trade or commerce in Tennessee.

51.  Defendant impliedly represented to the public, Plaintiff, the Class and others that its pet food products were safe for consumption by their pets and could be safely purchased.

52.  In fact, Defendant recalled or caused to be recalled millions of containers or pouches of pet food because it risked the health and well-being of consumers, customers, Plaintiff, purchasers, the Class, and others.

53.  Defendant violated Tenn. Code Ann. §47-18-104 (a) and sub-parts of (b) by placing these unsafe pet food products in the stream of commerce in Tennessee.

54.  Each Plaintiff, Class member, and other person adversely affected in Tennessee has suffered an ascertainable loss of money or property due to a violation of the Consumer Protection Act.

55.  Plaintiffs brings a claim for a violation of the Tennessee Consumer Protection Act under Tenn. Code Ann. §47-18-109, including the ascertainable loss of money or property by each such person.

## X.  Rule 23

56.  Plaintiffs ask this Court to certify the following Class:

All persons in the United States who purchased or fed his, her, or their cat(s) or dog(s) pet food produced or manufactured by Defendant that was or will be recalled by the Defendant, including that produced from December 3, 2006 up to and including March 6, 2007.

57.  Plaintiff is a member of the Class, sues as a representative party on behalf of all, and avers that the class is so numerous that joinder of all members is impracticable.

58.  There are questions of law or fact common to the Class.  These common questions include but are not limited to the following:

11

a. Whether Defendant sold pet food products that were recalled or subject to a recall?

b. Whether Defendant advertised, represented, or held itself out as producing or manufacturing a pet food product that was safe for pets of the class members?

c. Whether Defendant expressly warranted these products?

d. Whether Defendant impliedly warranted these products for fitness for a particular purpose?

e. Whether Defendant impliedly warranted these products for merchantability?

f. Whether Defendant purported to disclaim any express warranty?

g. Whether Defendant purported to disclaim any implied warranty?

h. Whether any limitation on warranty fails to meet its essential purpose?

i. Whether Defendant intended that the pet food products be purchased by Plaintiff, Class members, or others?

j. Whether Defendant intended or foresaw that Plaintiff, class members, or others would feed their pet food products to their pets?

k. Whether Defendant recalled the pet food products?

l. Whether Defendant was negligent in manufacturing or processing the pet food products?

m Whether using the products as intended – to feed their pets – resulted in loss, injury, damage, or damages to the Class?

n. Whether Defendant's negligence proximately caused loss or injury to damages?

o. Whether Class members suffered direct losses or damages?

p. Whether Class members suffered indirect losses or damages?

q. Whether Defendants' acts or practices violated state Deceptive Trade Practices Acts?

59. The claims or defenses of the representative parties are typical of the claims or defenses of the Class.

60. The representative parties will fairly and adequately protect the interests of the Class.

61. Prosecuting separate actions by individual members of the Class would create a risk of either –

a. Inconsistent or varying adjudications with respect to individual members of the class which would establish incompatible standards of conduct for defendants, the parties who oppose the class, or

b. Questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

c. Few, if any, Class members have an interest in individually controlling the prosecution of separate actions;

d. Plaintiff is unaware of any litigation concerning the controversy already commenced by members of the class;

e. It is desirable to concentrate the litigation of the claims in this forum;

f. No unusual difficulties are likely to be encountered in the management of a class action.

62.  The undersigned Attorneys for Plaintiff and the Class request that the Court appoint them to serve as class counsel first on an interim basis and then on a permanent basis.

63.  They will fairly and adequately represent the interests of the class, have identified or investigated the Class's potential claims, are experienced in handling class actions, other complex litigation, and consumer claims of the type asserted in the action, know the applicable law, will commit sufficient resources to represent the class, and are best able to represent the Class.

64.  Plaintiff requests this Court to certify this Class in accordance with Rule 23 and the Class Action Fairness Act of 2005.

## XII. Jury Demand

65.  The Class demands a jury trial on all issues triable by a jury.

## XIII. Prayer for Relief

Wherefore, premises considered, Plaintiff prays that the Court grant the following relief:

1.  That process issue and Defendant be served.  (Plaintiff's counsel will first provide Defendant's agent, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, NJ 08628 with a Notice of Lawsuit by mail pursuant to the Federal Rules)

2.  That as soon as practical, the Court certify a Class, defined herein, or modified as appropriate under the facts and law.

3.  That the Court find that Plaintiff has satisfied Rule 23's and federal law's requirements for certifying a Class.

4.  That the Court find that Defendant manufactured or processed the pet food
    products that were sold or offered to sale to Plaintiff and the Class.

5.  That the Court find that Defendant intended Plaintiff and Class members to
    believe that the pet foods sold were fit and safe for consumption by their pets.

6.  That a trial be held and Defendants be held liable to the Class for – breach of
    warranty, negligence, and under state statutes prohibiting deceptive trade
    practices.

7.  That the Class be awarded an amount sufficient for direct damages occasioned
    by Defendants' acts and practices.

8.  That the Class be awarded an amount sufficient for indirect, consequential,
    and incidental damages occasioned by Defendant's acts and practices.

9.  That the Class be awarded treble damages or special damages authorized by
    state statutes prohibiting deceptive trade practices, depending upon the State
    where the Class Member lives.

10. That the Court award reasonable attorney's fees and costs and expenses
    recoverable under law.

11. That the Court order such other, further relief as the case requires and justice
    demands.

Dated:  March 19, 2007.

                                        Respectfully submitted,

                                        /s/ A. James Andrews
                                        A. James Andrews, BPR # 15772
                                        905 Locust Street
                                        Knoxville, Tennessee 37902
                                        (865) 660-3993
                                        Fax: (865) 523-4623

/s/Perry A. Craft
Perry A. Craft, BPR # 6057
Craft & Sheppard, PLC
The Shiloh Building
214 Centerview Drive
Suite 233
Brentwood, Tennessee 37027
(615) 309-1707
(615) 309-1717 (fax)


/s/Nichole Bass
Nicole Bass, BPR # 021383
905 Locust Street
Knoxville, Tennessee 37902
(865) 310-6804


### Cost Bond

We are sureties for costs not to exceed $1,000.


/s/ A. James Andrews

16

# Exhibit C

U. S. DISTRICT COURT
WESTERN DISTRICT ARKANSAS
FILED

MAR 2 1 2007

CHRIS R. JOHNSON, CLERK

BY

DEPUTY CLERK

## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF ARKANSAS
## FAYETTEVILLE DIVISION

| | | |
|---|---|---|
| **CHARLES RAY SIMS and PAMELA SIMS,** **Individually and on behalf of all others** **similarly situated,** | § § § | **CIVIL ACTION NO.** 07-5053 |
| **Plaintiffs,** | § § | |
| **VERSUS** | § § | |
| **MENU FOODS INCOME FUND,** **MENU FOODS MIDWEST CORPORATION,** **MENU FOODS SOUTH DAKOTA INC.,** **MENU FOODS, INC., MENU FOODS** **HOLDINGS, INC.,** | § § § § § | |
| **Defendants.** | § § | |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

### <u>CLASS ACTION COMPLAINT</u>

NOW INTO COURT, through undersigned counsel, come Plaintiffs, CHARLES

RAY SIMS and PAMELA SIMS (hereinafter collectively "Plaintiff," "Plaintiffs", or "SIMS"),

major residents in the State of Arkansas, individually and on behalf of all others similarly

situated, who file this Class Action Complaint pursuant to Federal Rule of Civil

Procedure 23(a) and (b)(3), seeking monetary relief for themselves and the class they

seek to represent. This suit is brought against MENU FOODS INCOME FUND, MENU

FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU

FOODS, INC., and MENU FOODS HOLDINGS, INC., representing as follows:

## GENERAL ALLEGATIONS

1.      This is an action for damages relating to Defendants' design, manufacture, sale, testing, marketing, advertising, promotion and/or distribution of unsafe canned and foil pouched dog and cat food.

2.      This Court has jurisdiction over the subject matter and Defendants in this case pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between Plaintiffs and Defendants and the matter in controversy involves a request that the Court certify a class action.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the acts, conduct and damages complained of occurred in this district as Plaintiffs' residency is in Benton County, Arkansas, within the geographical boundaries of this Court.

## PARTIES, JURISDICTION AND VENUE

4.      Defendant MENU FOODS INCOME FUND is an unincorporated company with its principal place of business in Ontario, Canada. It is doing business in the State of Arkansas. Jurisdiction is appropriate pursuant to the Arkansas Long Arm Statute, Sec. 16-4-101, and service may be effected through the Hague Convention on service abroad of judicial and extrajudicial documents and civil or commercial matters (The Hague Convention) at 8 Falconer Drive, Streetsville, Ontario, Canada L5N 1B1.

5.      MENU FOODS MIDWEST CORPORATION is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

2

6.    Defendant MENU FOODS SOUTH DAKOTA INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

7.    Defendant MENU FOODS HOLDINGS, INC. is a Delaware corporation and may be served through its registered agent for service, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, Delaware.

8.    Defendant MENU FOODS, INC. is a New Jersey corporation and may be served through its registered agent for service, Corporation Trust Company, 820 Bear Tavern Road, West Trenton, New Jersey.

9.    Defendants MENU FOODS INCOME FUND, MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are hereinafter referred to collectively as "Defendants" or "MENU."

10.    Upon information and belief, Defendants MENU FOODS MIDWEST CORPORATION, MENU FOODS SOUTH DAKOTA INC., MENU FOODS, INC., and MENU FOODS HOLDINGS, INC. are wholly owned subsidiaries of MENU FOODS INCOME FUND, a business entity registered in and headquartered in Ontario, Canada. MENU provides principal development, exporting, financing, holding company, marketing, production, research and servicing for MENU animal food products in the United States, including canned and foil pouched dog and cat food. MENU FOODS INCOME FUND is one of the largest animal food producing companies in the world, and MENU operates as one of the largest animal food companies in the United States,

whether measured by number of products produced and sold, revenues, or market capitalization.

11.    At all times herein mentioned, Defendants were engaged in the business of the manufacturing, packaging, marketing, distribution, promotion, and sale of dog and cat canned and foil pouched food products (hereinafter the "Product"), and at all times herein relevant, were engaged in the promotion and marketing of animal food products, including canned and foil pouched dog and cat food.

12.    Plaintiff CHARLES RAY SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, he was a resident of Rogers, in the State of Arkansas.

13.    Plaintiff PAMELA SIMS resides at 2705 W. Dogwood, Rogers, Arkansas. At all times material to this complaint, she was a resident of Rogers, in the State of Arkansas.

14.    Plaintiffs CHARLES RAY SIMS and PAMELA SIMS were the owners of a family dog ("ABBY") at all times material to this complaint.

15.    This Court has diversity jurisdiction and jurisdiction pursuant to the Class Action Fairness Act of 2005.

## CLASS ACTION ALLEGATIONS

16.    Defendant MENU manufactured, distributed, marketed and sold canned and foil pouched dog and cat food to consumers in the United States.    These consumers compose the putative class in this action and have rights that are substantially the same.

4

17.    Defendant MENU has issued a recall for over 90 brands of dog and cat canned and foil pouched food in the United States since March 16, 2007, translating to in excess of sixty million cans and pouches of dog and cat food recalled throughout the United States.

18.    The consumers composing the putative class in this action consist of:  (1) all persons or entities who purchased Menu Food brands at any time and disposed of or will not use the products based on publicity surrounding the safety and recall of the products; (2) all persons or entities who purchased Menu Foods products and fed products to their pets on or since December 6, 2006; and (3) all persons or entities who purchased Menu Food products from wholesale distributors on or since December 6, 2006 to the present.

19.    The consumers composing the putative class are so numerous that joinder of all members is impracticable; the questions of law or fact are common to all members of the class; the claims and defenses of Plaintiff SIMS are typical of the claims or defenses of the class; and Plaintiff SIMS will fairly and adequately protect the interests of the class.

20.    While the exact number and identities of the members of the class are unknown at this time, it is asserted that the class consists of thousands of persons. Upon further identification of the recipient class, class members may be notified of the pendency of this action by published class notice and/or by other means deemed appropriate by the Court.

21.    The sheer number of consumers composing the putative class are so numerous as to make separate actions by each consumer impractical and unfair and a

5

class action certification represents the superior method for the fair and efficient adjudication of the controversy in question.

22.    There is no plain, speedy or adequate remedy other than by maintenance of this class action because Plaintiffs SIMS are informed and believe that the economic damage to each member of the class makes it economically unfeasible to pursue remedies other than through a class action.  There would be a failure of justice but for the maintenance of this class action.

## FACTUAL BACKGROUND

23.    Plaintiff's dog, ABBY, died as a direct result of the ingestion of canned and/or foil pouched dog food manufactured and distributed in the United States by Defendants.

24.    Defendants distributed their "Cuts and Gravy" canned and foil pouched dog and cat food product by misleading users about the product and by failing to adequately warn the users of the potential serious dangers, which Defendants knew or should have known, might result from animals consuming its product.  Defendants widely and successfully marketed Defendants' canned and foil pouched dog and cat food products throughout the United States by, among other things, conducting promotional campaigns that misrepresented the safety of Defendants' products in order to induce widespread use and consumption.

25.    As a result of claims made by Defendants regarding the safety and effectiveness of Defendants' canned and foil pouched dog and cat food products, Plaintiff SIMS fed their dog, ABBY, canned dog food distributed under the format "Cuts and Gravy", said product being manufactured and distributed by Defendants.

26.    As a result of Plaintiffs SIMS feeding their dog, ABBY, the Product manufactured and distributed by Defendants, their dog developed severe health problems, including but not limited to anorexia, lethargy, diarrhea and vomiting.

27.    Plaintiffs SIMS took their dog, ABBY, to Dr. Eric P. Steinlage, at All Dogs Clinic, Rogers, Arkansas, who performed tests and surgery on the dog.

28.    Dr. Eric P. Steinlage determined that Defendants' Product was the cause of the dog's kidney failure and the dog died on March 16, 2007.

29.    Had Plaintiff SIMS known the risks and dangers associated with Defendants' canned and foil pouched dog food product sold under the format "Cuts and Gravy", or had Defendants disclosed such information to Plaintiff, he would not have fed Defendants' product to their dog, ABBY, and the dog would not have suffered subsequent health complications and ultimately died before the age of two.

30.    Upon information and belief, as a result of the manufacturing and marketing of Defendants' canned and foil pouched dog and cat food products, Defendants have reaped huge profits; while concealing from the public, knowledge of the potential hazard associated with the ingestion of Defendants' canned and foil pouched dog and cat food products.

31.    Defendants failed to perform adequate testing in that the adequate testing would have shown that Defendants' canned and foil pouched dog and cat food products produced serious side effects with respect to which Defendants should have taken appropriate measures to ensure that its defectively designed product would not be placed into the stream of commerce and/or should have provided full and proper